UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

VLADIMIR O. ARIAS,

                    Defendant.

———————————————————————

REPORT & RECOMMENDATION

09-CR-6126CJS

## PRELIMINARY STATEMENT

By Order of Hon. Charles J. Siragusa, United States District Judge, dated July 31,

2009, all pretrial matters in the above-captioned case have been referred to this Court pursuant to

28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 15).

Defendant Vladimir Arias is charged in a five-count indictment.  (Docket # 11).

The first and third counts charge Arias with possession with intent to distribute more than five

grams of cocaine base and a quantity of cocaine, respectively, in violation of 21 U.S.C.

§ 841(a)(1).  The second count charges Arias with simple possession of cocaine base, in

violation of 21 U.S.C. § 844(a).  The fourth count charges him with possessing a firearm in

furtherance of the drug trafficking offenses charged in Counts One, Two and Three, in violation

of 18 U.S.C. § 924(c)(1).  All four counts relate to events that allegedly occurred on October 9,

2008.  The final count contains forfeiture allegations.

Currently pending before this Court is a motion by Arias to suppress physical

evidence seized from his vehicle on October 9, 2008.  (Docket # 19).  The government opposes

the motion. (Docket # 20). Arias also has filed a *pro se* motion to dismiss the indictment. (Docket # 47).

The parties have stipulated to certain facts concerning the events of October 9, 2008. (*See* Docket ## 29, 50, collectively referred to herein as "Stip."). This Court held evidentiary hearings on January 8, 2010 and April 1, 2010, during which the government elicited testimony from Rochester Police Officer Charles LoTempio.[1] (Docket ## 37, 45).

The following constitutes this Court's report and recommendation with respect to the suppression motion, as well as Arias's *pro se* motion.

## FACTUAL BACKGROUND

At the evidentiary hearing, Charles LoTempio ("LoTempio") testified that he had been employed as an officer with the Rochester Police Department for five years and that on October 9, 2008, his duties included training other police officers in the field. (Tr. A 3-4). On that date, LoTempio worked the 3:15 p.m. to 11:30 p.m. shift and was assigned to assist in the field training of Officer Dillon Minnick ("Minnick"). (*Id*.). In that capacity, LoTempio accompanied Minnick on his patrol, riding as a passenger in Minnick's patrol car. (Tr. A 5, 8). At approximately 9:03 p.m. that night, while Minnick was driving the patrol vehicle westbound on East Main Street in the City of Rochester, LoTempio heard "a loud thumping noise, like a loud bass." (Tr. A 5). When he heard the sound, his window was open about two to three

---

[1] The transcript of the suppression hearing conducted before this Court on January 8, 2010, shall be referred to herein as "Tr. A __." (Docket # 37). The transcript of the hearing conducted on April 1, 2010, shall be referred to herein as "Tr. B __." (Docket # 45).

As this Court explained on the record on April 1, 2010, this Court reopened the evidentiary hearing after determining that the record developed at the hearing had addressed only the basis for the stop of Arias's vehicle, but not the basis for its search and impoundment. (Tr. B 3-4; Docket # 41).

inches. (Tr. A 7). According to LoTempio, there was little traffic on East Main Street at that time and, as the patrol vehicle continued west, he determined that the sound was coming from the west. (Tr. A 5). After hearing the noise, LoTempio observed an SUV driving towards them on East Main Street about "20 to 30 car lengths away" – a distance of approximately "several hundred feet." (Tr. A 5-6). LoTempio could not recall that any other vehicles were in the vicinity when he observed the vehicle, a black 1999 Chevrolet Tahoe. (Tr. A 7-8, 10; Stip. ¶ 2). As the two vehicles drew closer, LoTempio perceived that the sound became louder. (Tr. A 6). After the Tahoe passed the patrol car, the noise gradually dissipated. (Tr. A 8, 13). On these facts, LoTempio concluded that the loud noise he heard was emanating from the Tahoe. (Tr. A 8).

LoTempio instructed Minnick to stop the Tahoe for a violation of Rochester's Municipal Code prohibiting loud music; LoTempio also testified that the Tahoe was stopped for a violation of New York State's Vehicle and Traffic Law because LoTempio did not see a front license plate on the Tahoe. (Tr. A 6; Tr. B 6-7, 13-14; Defendant's Exhibit ("D. Ex.") B). Section 75-12 of the City of Rochester Municipal Code provides:

> No person shall use or operate or suffer or permit to be used or operated . . . [a] machine or device for the producing, reproducing or amplification of sound with louder volume than is necessary for convenient hearing for the person or persons who are voluntary listeners thereto. It shall be prima facie evidence of a violation of this section if sound emanating from such machine or device is: . . . audible at a distance of 50 feet from such machine or device if operated from within a motor vehicle on a public street. . . . Any motor vehicle used in connection with the commission of a violation of this section shall be towed in accordance with § 111-75 of the Municipal Code.

Municipal Code § 111-75(C) also provides that vehicles used in violation of § 75-12 "shall be subject to towing and impound . . . [as] an abatement of [the] nuisance."

After Minnick activated his emergency lights, the driver of the Tahoe stopped his car on East Main Street in front of a public bus terminal. (Tr. B 7; Government's Exhibit ("G. Ex.") 1). Minnick approached the Tahoe and asked the driver for identification. (Tr. B 10). The driver produced an interim license, a New York State insurance car and an expired passport issued in 1987. (*Id.*; Tr. B 32). All three documents bore the name Vladimir Arias; the license and the passport reflected the same birth date in the year 1977 (the insurance card had no birth date); and the insurance card and interim license reflected the same address (the passport had no address). (Tr. B 31-33; G. Ex. 11; D. Ex. E). According to the birth date reflected on the documents, the passport holder was ten years old when the passport was issued. (G. Ex. 11). LoTempio examined the documents and determined that the driver did not resemble the individual depicted in the expired passport photograph. (Tr. B 9-11). He also conducted a computer check of the interim license number and verified that it was valid. (Tr. B 10).

Minnick asked the driver, who was later identified as Arias, to exit the vehicle, and Arias complied. (Stip. ¶ 10). Minnick pat-frisked him and directed him to sit in the back seat of the patrol vehicle. (Stip. ¶ 11). Arias was not placed in handcuffs, and Minnick remained in the vehicle with him. (*Id.*).

LoTempio examined the Tahoe and determined that the vehicle in fact had a front license plate, although it had been unlawfully affixed to the grill of the car with a plastic zip tie. (Tr. B 7; G. Exs. 2, 3). A few minutes after Arias had exited the car, LoTempio made the decision to tow it. (Tr. B 12-13). LoTempio testified that he understood that Section 75-12 of the Municipal Code required that vehicles being operated in violation of the noise ordinance be towed in order to abate the noise nuisance. (Tr. B 13, 29). LoTempio also testified that he would not permit Arias to drive the Tahoe from the bus terminal where it was parked because he

had not properly identified him at that point and was "concerned" about his identity. (Tr. B 14-15, 31). According to LoTempio, he could not permit the Tahoe to remain parked in front of the bus terminal because it would have obstructed bus traffic. (Tr. B 14). LoTempio further explained that liability risks prevented him from moving the Tahoe. (Tr. B 31).

LoTempio testified that he conducted an inventory search of the Tahoe pursuant to the police department's General Order 511. (Tr. B 15-16; D. Ex. A). By its terms, General Order 511 requires that an inventory search be conducted of any vehicle prior to towing. (D. Ex. A, § II(E)(1)). The Order further provides that vehicles may be towed from public property "[w]hen necessary to maintain the flow of traffic" and when permitted by Municipal Code § 111-75(C). (D. Ex. A, §§ I(C)(1) and (9)). At the hearing, LoTempio testified that the purpose of a pre-towing inventory search is to protect the vehicle owner from loss, to protect the police department from liability in the event of a claim of loss and to promote safety by removing any weapons or contraband from a vehicle designated for towing. (Tr. B 16).

LoTempio first searched the passenger compartment of the Tahoe. (Tr. B 17). LoTempio found a handgun and several baggies containing suspected cocaine in a storage compartment in the center console.[2] (Tr. 17-18; Stip. ¶¶ 14-15). At that point, Arias was arrested and searched incident to arrest. (Tr. B 19; Stip. ¶ 16). During the search, officers found $2,663.91 in United States currency in Arias's front left pants pocket. (Stip. ¶ 17).

When LoTempio resumed his search of the Tahoe, he found a sub-woofer amplifier and two handgun holsters. (Tr. B 19-20; Stip. ¶ 13). Pursuant to General Order 511, all items seized from the Tahoe were recorded on written inventory forms. (Tr. B 20-24; D. Ex.

---

[2] The substance in the baggies later tested positive for cocaine. (Stip. ¶ 15).

A, § II(E)(3); G. Exs. 5-7). Approximately an hour after the initial traffic stop, one of the law enforcement officers called for a tow truck and, at about 10:15 p.m., the Tahoe was towed from its location on East Main Street. (Tr. B 30; G. Ex. 8).

After Arias was taken to the police station, LoTempio verified his identity as Vladimir Arias by "run[ning] his information . . . through [the] MORIS identification system." (Tr. B 9). No testimony was elicited concerning whether such verification could have been made at the scene.

## DISCUSSION

Arias contends that suppression of the evidence seized from the Tahoe is warranted on two separate bases. First, he argues that reasonable suspicion did not justify the stop of the Tahoe. (Tr. A 18). Second, he maintains that the search and seizure of his vehicle was unreasonable under the Fourth Amendment because the municipal ordinance upon which the seizure was based was unconstitutional. (Docket # 19, ¶¶ 10-12; Tr. A 18-19). As to the latter contention, the government argues that even if the ordinance were unconstitutional, Officer LoTempio relied upon it in good faith and his reliance was objectively reasonable, thus rendering the exclusionary rule inapplicable.

## I.  Initial Stop

According to the Second Circuit, an ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth Amendment. *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir.) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)), *cert. denied*, 513 U.S. 877 (1994). A traffic stop must be justified by probable cause or "reasonable suspicion, based on

specific and articulable facts, of unlawful conduct." *Id.* (quoting *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993), *cert. denied*, 511 U.S. 1006 (1994)); *see Terry v. Ohio*, 392 U.S. 1, 30 (1968) (police officer may lawfully conduct brief stop if officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot"); *see also Knowles v. Iowa*, 525 U.S. 113, 117 (1998) (routine traffic stop is more analogous to *Terry* stop than to formal arrest). Evidence obtained as the result of an unjustified traffic stop "'is subject to the fruit of the poisonous tree doctrine' and may be suppressed." *United States v. Scopo*, 19 F.3d at 781 (citing *United States v. Hassan El*, 5 F.3d at 729); *see also Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

On a motion to suppress, a defendant bears the initial burden of establishing that a government official acting without a warrant subjected him to a search or seizure. *See United States v. Arboleda*, 633 F.2d 985, 989 (2d Cir.1980) (citations omitted), *cert. denied*, 450 U.S. 917 (1981); *United States v. Chavis*, 48 F.3d 871, 872 (5th Cir.1995); *United States v. Bayless*, 921 F. Supp. 211, 213 (S.D.N.Y. 1996). Once the defendant has met this burden, the burden then shifts to the government to demonstrate by a preponderance of the evidence that the search or seizure did not violate the Fourth Amendment. *United States v. Bayless*, 921 F. Supp. at 213 (citing *United States v. Arboleda*, 633 F.2d at 989); *see also United States v. Bonilla Romero*, 836 F.2d 39, 45 (1st Cir. 1987) ("[w]hen it has acted without a warrant, the ultimate burden of persuasion is then upon the government to show that its evidence is not tainted") (citing *Alderman v. United States*, 394 U.S. 165, 183 (1969)), *cert. denied*, 488 U.S. 817 (1988).

In this case, LoTempio testified that while on patrol on East Main Street, he heard "a loud thumping noise, like a loud bass." (Tr. A 5). He ascertained that the sound was coming from the direction in which Minnick's patrol vehicle was traveling. Although he did not observe

7

any vehicles in the area when he first heard the noise, he soon observed a vehicle approaching from the opposite direction on East Main Street. When he first saw the car, it was several hundred feet from Minnick's patrol car. As the vehicle approached, the loud bass sound became even louder. After the vehicle passed, the sound dissipated. In addition, LoTempio observed that the vehicle appeared to be missing a front license plate.

Based on the above, I find that the stop of the Tahoe was lawful. LoTempio's observations provided both probable cause to believe that the driver of the Tahoe had violated the noise ordinance and reasonable suspicion to believe that the driver was operating a vehicle without a front license plate, a traffic violation. *See, e.g.*, *Whren v. United States*, 517 U.S. 806, 810 (1996) ("the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"); *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009) ("reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop"); *United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir.) ("because the officers had a reasonable but mistaken belief that the SUV lacked license plates, stopping the vehicle was 'justified at its inception'"), *cert. denied*, 549 U.S. 1008 (2006); *Scopo*, 19 F.3d at 782 ("[w]hen an officer observes a traffic offense – however minor – he has probable cause to stop the driver of the vehicle") (internal quotation omitted); *United States v. Harrison*, 2008 WL 2626829, *3 (N.D.N.Y. 2008) (traffic stop based on "non-functioning license plate light[] was lawful"). Accordingly, I find that the initial stop of Arias's vehicle was constitutional.

## II.   Constitutionality of the Seizure and Search of the Tahoe

Arias argues that even if the initial traffic stop had been supported by reasonable suspicion – as I find it to have been – the search and seizure of his car were unreasonable under the Fourth Amendment.  The government responds that the seizure of Arias's car was mandated by the noise ordinance, which required the towing of vehicles being operated in violation of the ordinance, and that LoTempio's reliance on the ordinance was objectively reasonable.  The government further argues that the inventory search of the car was conducted in accordance with established police policy and procedures.

As both parties acknowledge, the facts of this case raise the question of the applicability of the good faith exception to the exclusionary rule recognized in *Illinois v. Krull*, 480 U.S. 340 (1987).  In that case, the Supreme Court held that the exclusionary rule does not apply when law enforcement officers seize evidence in objectively reasonable reliance upon a statute, even though the statute may be found to be unconstitutional.  *Illinois v. Krull*, 480 U.S. at 355.  Whether *Krull* should apply to the facts of this case is sharply disputed by the parties.

### A.   The Impoundment of the Tahoe

"In the interests of public safety and as part of what the [Supreme] Court has called 'community caretaking functions,' automobiles are frequently taken into police custody." *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976) (internal citation omitted).  Such impoundments constitute seizures within the meaning of the Fourth Amendment and their constitutionality turns on the reasonableness of the impoundment as an exercise of law enforcement's "community caretaking" responsibilities.  *See South Dakota v. Opperman*, 428 U.S. at 369-70; *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996).  Community caretaking functions are "totally divorced from the detection, investigation, or acquisition of

9

evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Opperman*, 428 U.S. at 369.

When engaged in community caretaking and traffic-control activities, police may remove from the streets disabled or damaged vehicles, or vehicles that block traffic or have otherwise violated parking ordinances. *Id.* at 368-69. In addition, towing may be appropriate where the driver is incapacitated or unlicensed. *See, e.g.*, *Cady v. Dombrowski*, 413 U.S. at 443 (defendant was intoxicated and could not make arrangements to have vehicle moved); *Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir. 2005) (state need not permit driver to drive away if driver cannot do so "in compliance with all regulations intended to ensure the vehicle's safe operation"); *United States v. Rodriguez-Morales*, 929 F.2d 780, 795 (1st Cir. 1991) ("[u]pon ascertaining that neither occupant was properly licensed to drive, the decision not to let the vehicle continue on its journey was quintessentially reasonable"), *cert. denied*, 502 U.S. 1030 (1992); *United States v. Velarde*, 903 F.2d 1163, 1166 (7th Cir. 1990) (neither occupant had a valid driver's license); *United States v. Messina*, 2009 WL 455306, *3 (S.D.N.Y. 2009) (driver arrested); *United States v. Barrios*, 2007 WL 3256945, *3 (S.D.N.Y. 2007) (vehicle was "illegally parked, potentially unlocked [and] likely to be unattended for an unknown but significant period of time" while the driver was booked for arrest), *aff'd*, 2010 WL 774669 (2d Cir. 2010). It is also permissible to impound the vehicle as a caretaking function where the vehicle will be left unattended for a period of time and may be vulnerable to vandalism or theft. *See, e.g.*, *United States v. Smith*, 522 F.3d 305, 314-15 (3d Cir.) (reasonable to tow vehicle where occupants were arrested and vehicle was stopped in dangerous area where vehicle would

be at risk for damage, vandalism or theft), *cert. denied*, 129 S. Ct. 488 (2008); *United States v. Best*, 415 F. Supp. 2d 50, 54-55 (D. Conn. 2006) (collecting cases).

In the case at bar, LoTempio testified that he decided to tow the Tahoe for two reasons. First, he had determined that Arias had violated Section 75-12 of the noise ordinance, which he understood mandated the towing of Arias's car. Second, LoTempio testified that the Tahoe would have impeded bus traffic had it not been moved, but he could not allow Arias to move it because he had not properly ascertained Arias's identity or lawful right to drive.

Considering the totality of the circumstances, I do not find that the second justification advanced by the government comports with the reasonableness standard of the Fourth Amendment. As soon as Arias was stopped and asked to present identification, he presented three different forms of identification, all of which were consistent with one another. All reflected the same name (his); the two recent documents (license and insurance card) also bore the same address; and, the license and passport bore the same birth date. The interim license was valid, and although LoTempio testified that the driver did not appear to be the same person depicted in the passport, a careful examination of the passport would have revealed that it had been issued over twenty years earlier when the holder was only ten years old. That an adult does not resemble his or her childhood photograph hardly seems unusual. In any event, LoTempio eventually ran a computer check and confirmed that the driver was in fact Arias, and the government has not shown why that verification could not reasonably have been made at the scene.

I now turn to the validity of LoTempio's other justification for towing the Tahoe and specifically whether the impoundment was reasonable in order to abate the noise nuisance created by the vehicle. If it were, the existence of an ordinance authorizing the impoundment

11

would be immaterial because the towing would not run afoul of the reasonableness clause of the

Fourth Amendment.  Of course, in this case, such an ordinance did exist and LoTempio testified

that he relied on it in determining to tow the Tahoe.  Under these circumstances, the question

shifts slightly from whether the impoundment was reasonable under the Fourth Amendment to

whether LoTempio's reliance on the ordinance was objectively reasonable.  That shift in analysis

reflects the Supreme Court's holding in *Krull* that the exclusionary rule should not apply to

suppress evidence seized in objectively reasonable reliance on a statute, even if it is later found

to be unconstitutional.

> As the Supreme Court reasoned in that case:
>
> The application of the exclusionary rule to suppress evidence
> obtained by an officer acting in objectively reasonable reliance on
> a statute would have as little deterrent effect on the officer's
> actions as would the exclusion of evidence when an officer acts in
> objectively reasonable reliance on a warrant. Unless a statute is
> clearly unconstitutional, an officer cannot be expected to question
> the judgment of the legislature that passed the law. If the statute is
> subsequently declared unconstitutional, excluding evidence
> obtained pursuant to it prior to such a judicial declaration will not
> deter future Fourth Amendment violations by an officer who has
> simply fulfilled his responsibility to enforce the statute as written.

*Id*. at 349-50.  If, however, the statute's "provisions are such that a reasonable officer should

have known that the statute was unconstitutional," then the good-faith exception will not apply.

*Id*. at 355.  Thus, in considering the applicability of *Krull*, courts examine the challenged statute

not to determine whether it is constitutional, but "only to determine whether it was so 'clearly

unconstitutional' that the police could not in good faith have relied on it."  *United States v.

Stowe*, 100 F.3d 494, 498 (7th Cir. 1996), *cert. denied*, 520 U.S. 1171 (1997).  *See also United

States v. Steed*, 548 F.3d 961, 969 (11th Cir. 2008); *United States v. Vanness*, 342 F.3d 1093,

1099 (10th Cir. 2003) ("we do not decide the constitutionality of the [noise] ordinance, but

merely that it was objectively reasonable for the officers to rely on the noise ordinance"). The standard of reasonable reliance is an objective one that "does not turn on the subjective good faith of individual officers." *Krull*, 480 U.S. at 355.

At the time of the impoundment in this case, no cases had been decided addressing or determining the constitutionality of the towing provision of the noise ordinance. Two decisions determining that the provision was unconstitutional because it exceeded the bounds of legitimate community caretaking functions were subsequently issued, but each post-dated the events on which this motion is predicated. *See People v. Davis*, 25 Misc. 3d 634, 636 (N.Y. Co. Ct. 2009); *People v. Iverson*, 22 Misc. 3d 470, 477 (N.Y. Cty. Ct. 2008). Because the correctness of those determinations is not necessary to a resolution of the pending suppression motion, the Court should not decide the constitutional issue. *See, e.g., United States v. Vanness*, 342 F.3d at 1098 ("federal courts should avoid reaching the merits of a constitutional issue when the case may be decided on other grounds") (internal citation omitted); *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 149-50 (2d Cir. 2001) ("[i]t is axiomatic that the federal courts should, where possible, avoid reaching constitutional questions") (citing *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944)); *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 345 (1936) (Brandeis, J., concurring) ("It must be evident to any one that the power to declare a legislative enactment void is one which the judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility") (quoting 1 Cooley, *Constitutional Limitations* 332 (8th Ed.)).

I find that the towing provision, even if it was unconstitutional, was not so clearly unconstitutional that LoTempio's reliance upon it was objectively unreasonable. First,

community caretaking functions extend to measures to maintain the peace and quiet of a community, including to abate excessive noise. *See*, *e.g.*, *United States v. Rohrig*, 98 F.3d 1506, 1522 (6th Cir. 1996) ("the governmental interest in immediately abating an ongoing nuisance by quelling loud and disruptive noise in a residential neighborhood is sufficiently compelling to justify warrantless intrusions [even into private residences] under some circumstances"). Second, community caretaking functions traditionally encompass the impoundment of vehicles in order to protect public safety. *See Opperman*, 428 U.S. at 369; *Miranda v. City of Cornelius*, 429 F.3d at 860 ("the community caretaking doctrine allows the police to impound where necessary to ensure that the location or operation of vehicles does not jeopardize the public safety"). Clearly, the operation of a vehicle that is creating excessive noise jeopardizes public safety by minimizing the ability of the driver, as well as other motorists and pedestrians in the vicinity, to hear sounds, such as car horns, emergency vehicle sirens and train signals, designed to prevent accidents.

In light of the above considerations, I find that a reasonably well-trained officer[3] would not have known that the legislature's determination that a vehicle being operated in violation of the noise ordinance should be towed was clearly unconstitutional. My judgment that LoTempio's reliance on the towing provision was objectively reasonable is reinforced by the absence of any cases at the time of LoTempio's decision declaring the statute unconstitutional

---

[3] *See United States v. Leon*, 468 U.S. 897, 922 n.23 (1984) ("our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the [seizure] was illegal"); *United States v. Steed*, 548 F.3d at 974 ("we evaluate the objective reasonableness of [the officer's] reliance on the statute under a 'reasonably well-trained officer' standard as opposed to a 'reasonable jurist' standard").

and the absence of authority finding similar ordinances unconstitutional.[4]  *See United States v. Ferrara*, 771 F. Supp. 1266, 1298 (D. Mass. 1991) (agents' reliance on statute reasonable, noting absence of cases addressing constitutionality of statute at time of agents' reliance).  Indeed, the Supreme Court has acknowledged that "caretaking procedures have almost uniformly been upheld by the state courts, which by virtue of the localized nature of traffic regulation have had considerable occasion to deal with the issue."  *Opperman*, 428 U.S. at 369.

Finally, the fact that the Rochester Police Department had issued a general order that was in effect at the time of the impoundment authorizing towing on the basis of the ordinance makes LoTempio's reliance on the statute even more objectively reasonable.  A contrary determination would amount to a finding that a reasonably well-trained officer would have known the ordinance was clearly unconstitutional even though the Rochester Police Department itself had instructed its officers to comply with the ordinance.  *Cf. United States v. Ramirez*, 115 F. Supp. 2d 918, 924 (W.D. Tenn. 2000) ("[a]ny officer trained to enforce the . . . municipal ordinances would rely on the language of the ordinance").

As the Supreme Court has recognized,

> Police are charged to enforce laws until and unless they are declared unconstitutional.  The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality – with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.  Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

---

[4]  The defense has cited no authority holding similar statutes or ordinances to be unconstitutional, nor is any cited in the two state court decisions that determined, subsequent to the events at issue in this case, that the towing provision of Section 75-12 is unconstitutional.  *See People v. Davis*, 25 Misc. 3d at 636; *People v. Iverson*, 22 Misc. 3d at 477.

*Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). *See United States v. Cardenas-Alatorre*, 485 F.3d 1111, 1117 (10th Cir.) ("[r]easonable officers . . . enforce the legislative enactments they are given and do not arrogate to themselves the right to second guess the people's representatives, except in the most extreme of cases"), *cert. denied*, 552 U.S. 966 (2007). Under the circumstances presented here, I find that Officer LoTempio's reliance on the towing provision of the municipal ordinance was objectively reasonable and forecloses application of the exclusionary rule.

### B. The Inventory Search

Having determined that the good faith exception to the exclusionary rule should apply to the towing of the Tahoe, I must next determine whether a warrantless inventory search was permissible prior to towing.

Inventory searches constitute a "well-defined exception to the Fourth Amendment's warrant requirements." *United States v. Thompson*, 29 F.3d 62, 65 (2d Cir. 1994) (citing *Colorado v. Bertine*, 479 U.S. 367, 371-72 (1987)). "[W]hen law enforcement officials take a vehicle into custody, they may search the vehicle and make an inventory of its contents without need for a search warrant and without regard to whether there is probable cause to suspect that the vehicle contains contraband or evidence of criminal conduct." *United States v. Lopez*, 547 F.3d 364, 369 (2d Cir. 2008), *cert. denied*, 129 S. Ct. 1604 (2009). As the Supreme Court has observed, securing and inventorying the contents of an impounded vehicle protects the owner's property while the vehicle remains in police custody and the police from false claims of theft or loss and potential danger. *Opperman*, 428 U.S. at 369. "The service of these objectives is wholly independent of whether the contents of the car figure in any way in a criminal investigation or prosecution." *United States v. Lopez*, 547 F.3d at 369-70. Nevertheless, an

inventory search must be conducted pursuant to "standardized criteria . . . or established routine" in order to prevent law enforcement officers from using it as "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). *Accord Lopez*, 547 F.3d at 370; *United States v. Thompson*, 29 F.3d at 65. "The existence of such a valid procedure may be proven by reference to . . . written rules and regulations." *Thompson*, 29 F.3d at 65.

       In the case at bar, LoTempio testified that General Order 511 required that inventory searches be performed prior to the towing of any vehicle. Specifically, LoTempio testified that inventory searches protect the owner of the vehicle from loss and the police department from liability for loss, and facilitate officer safety by ensuring that weapons and contraband are removed from the vehicle. LoTempio searched the passenger compartment, as instructed by the general order, and discovered a handgun and baggies containing what he believed to be cocaine. Consistent with the requirements of the general order, the items seized from the Tahoe were identified and recorded on the inventory report. On this record, I find that LoTempio followed established policies and procedures of the Rochester Police Department in conducting the inventory search of the Tahoe prior to its impoundment.

       Having found that (1) the traffic stop was justified, (2) Officer LoTempio's reliance on the towing provision of the ordinance was objectively reasonable, and (3) the inventory search was performed in accordance with established policy and routine procedure, I recommend that the district court deny Arias's motion to suppress the evidence seized from the Tahoe.

### III. __Motion to Dismiss the Indictment__

Finally, Arias has also filed a *pro se* motion to dismiss the charges on the grounds that the indictment is insufficient and that the statutes that he has been charged with violating have been selectively enforced against him on the basis of his race. (Docket # 47). For the reasons below, I recommend that the district court deny Arias's motion.

An Assistant Federal Public Defender represented Arias at his initial appearance in this case. (Docket # 2). Arias thereafter retained his present counsel. (Docket # 3). With input from counsel, this Court set September 14, 2009 as the deadline for the defense to file any pretrial motions. (Docket # 16). Arias's counsel then filed omnibus motions, some of which are the subject of this report and recommendation. (Docket # 19). Since then, Arias's counsel has not moved to withdraw as counsel, nor has Arias waived his right to counsel and sought to proceed *pro se*.

Although criminal defendants possess both the right to appear *pro se* and to appointed counsel, ordinarily "those rights cannot both be exercised at the same time." *Ennis v. LeFevre*, 560 F.2d 1072, 1075 (2d Cir. 1977) (quoting *United States v. Mitchell*, 137 F.2d 1006, 1010 (2d Cir. 1943)), *cert. denied*, 435 U.S. 976 (1978). Thus, "a criminal defendant has no constitutional or statutory right to represent himself as co-counsel with his own attorney." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989) (citing *Ennis v. LeFevre*, 560 F.2d at 1075), *cert. denied*, 493 U.S. 1081 (1990). *See also United States v. Stevens*, 83 F.3d 60, 67 (2d Cir.) ("defendant has no absolute right" to serve as co-counsel in his defense), *cert. denied*, 519 U.S. 902 (1996). Whether to permit such "'hybrid representation' lies solely within the discretion of the trial court." *United States v. Tutino*, 883 F.2d at 1141 (citing *O'Reilly v. New York Times Co.*, 692 F.2d 863, 869 (2d Cir. 1982)). A court need not permit hybrid

representation if a defendant does not offer a "compelling reason," *id.*, or show that "the interests of justice [would be] served by a defendant's supplementation of the legal services provided by his retained counsel," *United States v. Swinton*, 400 F. Supp. 805, 806 (S.D.N.Y. 1975). *See also United States v. Muyet*, 985 F. Supp. 440, 441 (S.D.N.Y. 1998) (denying defendant's motion to submit *pro se* amendments to his attorney's post trial motions). Where the Court declines to exercise its discretion to permit hybrid representation, the Court may deny any pending *pro se* motions. *See United States v. D'Souza*, 1992 WL 151920, *2 (E.D.N.Y. 1992) (denying defendant's *pro se* motions without prejudice to later presentation through counsel).

Here, Arias has not moved for an order permitting him to act as co-counsel, nor has he presented any reason why the interests of justice would be served by permitting him to supplement his counsel's advocacy. Further, the instant motion was filed well after the court-imposed deadline, which was sufficient to afford adequate time to Arias's attorney to file any appropriate pretrial motions. *Cf. United States v. Muyet*, 985 F. Supp. at 440 (noting that defendant's substituted counsel had liberal time "to review the trial record and make those arguments that he deemed to be meritorious"). Because Arias does not have the right to file *pro se* motions and because those motions are, in any event, untimely, I recommend that the district court deny Arias's motion to dismiss the indictment without reaching its merits.[5]

---

[5] Even were the motion not procedurally barred, it lacks merit. It is well-established that an indictment that is valid on its face cannot be dismissed on the grounds that it is based on inadequate or insufficient evidence. *United States v. Williams*, 504 U.S. 36, 54 (1992); *United States v. Calandra*, 414 U.S. 338, 345 (1974); *United States v. Casamento*, 887 F.2d 1141, 1182 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990). Instead, the time to advance such a motion is after the government has presented its case at trial. *See, e.g.*, *United States v. Gambino*, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992); Fed. R. Crim. P. 29(a). Here, Arias has not alleged any credible basis for this Court to find that the indictment is deficient in any manner.

Further, he has alleged no facts to support his contention that he has been selectively prosecuted on the basis of his race. Therefore, his argument must fail. *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (in a selective prosecution claim, "the presumption of regularity supports . . . prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties")

**CONCLUSION**

For the reasons set forth above, I recommend that the district court deny Arias's motions to suppress tangible evidence (Docket # 19) and to dismiss the indictment (Docket # 47).

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
        June   17  , 2010

_____

(internal brackets and quotations omitted).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

      **ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

      **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[6]

      The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

      **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

      The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

      Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**


                            *s/Marian W. Payson*
                               MARIAN W. PAYSON
                       United States Magistrate Judge

Dated: Rochester, New York
      June   17  , 2010

---

[6]Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).